155 N.J. Super. 196 (1977)
382 A.2d 659
LILLIAN STOUT, PLAINTIFF-APPELLANT/CROSS-RESPONDENT,
v.
KENNETH STOUT, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued November 14, 1977.
Decided December 16, 1977.
*200 Before Judges ALLCORN, MORGAN and HORN.
Mr. Frank L. Scott argued the cause for appellant.
Mr. Phillip Lewis Paley argued the cause for respondent (Messrs. Golden, Shore and Paley, attorneys).
PER CURIAM.
This is an appeal by plaintiff wife and a cross-appeal by defendant husband in this matrimonial cause.[1]
The evidence introduced at the contested hearing disclosed the following relevant facts. The parties were married in 1959. Four children, whose ages ranged at the time of the hearing from 9 to 16, were born of the marriage and they are *201 in plaintiff's custody under the terms of the judgment. One of the children, second from the oldest (age 14 1/2), was born with a physical defect. The parties differ only in their assessment of the extent of his disability, but apparently there is no disagreement that he requires special attention. Defendant is a high-school physical education teacher whose gross earnings as such are $19,358 a year. He also receives medical and hospital insurance, and dental and prescription medicine coverage for himself and his children. As a lieutenant colonel in the United States Army Reserve his gross income for the year 1975 was $7,467. It was estimated that his gross income as such officer for the year 1976 would be $3,729, the sharp decrease being explained by the fact that in the year 1975 there was a nonrecurrent situation which caused him to earn more than he would earn normally. His projected net income from both sources for the school year 1975-1976 was $15,575. However, since the school year itself is only ten months he could earn more by working during the summer months, if he can find employment.
Following the hearing before the trial judge and a subsequent application to modify the judgment, the attorney who represented plaintiff withdrew from that representation and present counsel was substituted.
The aforementioned hearing was held in September 1976 and the final judgment of divorce appears to have been signed on October 27, 1976. The relevant provisions of the final judgment provide for payment by defendant of $165 a week for support of plaintiff and the four children, of which sum $50 is for support of plaintiff. The payment of $50 a week to plaintiff is to terminate upon her death, remarriage or upon the sale of the marital home. Plaintiff is given the right to remain in said home and to use the furnishings for a period of two years from the date of the judgment, at which time the home is to be sold. By way of equitable distribution, the proceeds from the sale of the premises and furnishings are to be divided equally, except that a $1,300 arrearage owed by defendant is to be satisfied out of his share. Defendant *202 is required to repay a small loan to his teachers' pension fund and then liquidate his share and pay half the proceeds to plaintiff  approximately $2,000. Defendant is also required to pay for medical expenses over $100 per child per year, and to maintain the medical, dental and pharmaceutical insurance coverage for each child. Finally, plaintiff's counsel was awarded a fee of $1,000 to be paid by defendant.
Basically, plaintiff's discontent arises from that portion of the final judgment which decrees that the marital residence be sold within two years and the proceeds be divided between the parties, as stated, and the cessation at that time of the payment of $50 a week as alimony to plaintiff.
We are of the view that plaintiff's contention on this point is well-founded, for two reasons. The first reason is concerned with the procedure followed by the trial judge in entering the final judgment. The second reason goes to the substance of the judgment itself in directing the sale of the premises and the cessation of plaintiff's alimony at the expiration of two years from the date of the judgment.
At the termination of the hearing the judge announced his conclusions orally, part of which was that "under the present circumstances and the income that has been testified to that has not been refuted, the court will award the sum of $165 a week support and alimony to be allocated in any fashion that you Counsel may determine." The judge then directed that plaintiff would have the right and sole use of the marital home and furnishings for a period of two years, and at the end of the two years the house would be listed for sale and the proceeds would be divided between the parties equally. The judge did not state as part of his conclusions, as already noted, that the wife's alimony was to be $50 or that defendant would no longer be responsible to pay alimony to her when the house was sold. In fact, the final judgment omitted to direct that the husband was responsible for pharmaceutical expenses, which was contrary to the direct declaration of the judge at the hearing.
*203 Thereafter, plaintiff's counsel submitted a draft of judgment which apparently raised some questions, so that the judge and counsel met in chambers, and we assume that they agreed to such changes as appear in the final judgment. No transcript of the conference was made and it is clear that plaintiff was not present and was not even told that there would be modifications of the judge's determinations from those which she heard when the judge announced his conclusions in the courtroom.
Shortly after plaintiff learned of the contents of the final judgment she wrote letters to the judge and her attorney, expressing her dissatisfaction with the judgment. A hearing was held before the trial judge in which her then attorney stated that, although he was unclear as to specifically what plaintiff was unhappy about, he thought that it was that she was not going to receive alimony beyond the two-year period. At the hearing, at which plaintiff was permitted to speak, plaintiff also expressed other dissatisfactions with the judgment, but they are not made a subject of complaint in her appeal.
It is well-known that matrimonial cases are often charged with highly emotional and sensitive issues. It is most important in such cases that every substantial decision be made in open court, so that the parties may hear what is said and may have an opportunity at that time to confer with their counsel and otherwise participate in the hearing. Sometimes, as a matter of necessity or for good reason, settlement discussions may take place in the judge's chambers. When that occurs, the respective parties should be invited to attend. Whether or not they attend, it is most important that, after counsel have conferred as to the terms of a settlement and have indicated to the judge that their respective clients are in accord, the judge questions the respective parties in open court and upon the record, so that there can be no future misunderstanding as to the terms of the agreement and as to their voluntary consent to same with full knowledge *204 of those terms. This procedure was not followed in the instant case.
This should not be taken as any reflection upon the integrity of counsel; it is not so intended. As indicated, in the emotional state of the parties or for other reasons misunderstandings or alleged misunderstandings may otherwise be claimed.
As stated, counsel apparently agreed that $50 of the $165 be allocated for the support of plaintiff. Such a determination is ordinarily made by the court on the basis of the relevant factors. Khalaf v. Khalaf, 58 N.J. 63, 67 (1971); Capodanno v. Capodanno, 58 N.J. 113 (1971). R. 4:79-9(a) provides that in awarding alimony or support, or both, the judgment or order shall contain separately the amounts allowed for alimony and the amounts allowed for support, unless for good cause shown the court determines that the amounts should not be segregated. "Good cause in this context will generally relate to tax considerations known to the parties and inducing a non-allocation agreement between them." Pressler, Comment to R. 4:79-9 (Gann ed. 1977). The record is barren of any cause for not segregating the amounts in the first instance, rather than leaving it to counsel. Since the respective needs of the children may also be diverse, especially because of one's affliction, the amount of support for each child should likewise have been determined and incorporated in the judgment.
The substantive reason why we view to be erroneous the direction in the order that the premises and the furnishings be sold at the expiration of two years, and that defendant be relieved of any further alimony payments, is simply because there is no evidence in the record to support that determination. State v. Johnson, 42 N.J. 146 (1964). Actually, the undisputed facts militate against such disposition. At the end of two years three of the children would still be minors and one of those children would still be handicapped. Plaintiff's earnings may remain the same, about $750, or may rise, but the outlook for a major increase *205 is purely conjectural. Rents for living quarters most likely will increase. There is no way of knowing whether appropriate quarters would be within the financial reach of plaintiff. Although it may be expected that there would be some profit from the sale of the house and furnishings, it can hardly be predicted whether it would be substantial enough so as to provide any real and meaningful assistance. In short, the order to sell was arbitrary and constituted an abuse of discretion.
Equitable distribution is not simply a matter of mechanical division of marital assets. The concept requires much more than that. Painter v. Painter, 65 N.J. 196, 211 (1974). See Gemignani v. Gemignani, 146 N.J. Super. 278 (App. Div. 1977). The word "equitable" itself implies the weighing of the many considerations and circumstances that are presented in each case.
The concept of alimony is reiterated in Di Tolvo v. Di Tolvo, 131 N.J. Super. 72 (App. Div. 1974). As stated therein, alimony is an allowance in periodic installments and takes into account many factors. Orders therefor operate for the present and may always be altered or modified upon a change of circumstances. The concept of equitable distribution and alimony and support should not be confused by the entry of orders leaving no room for the usual proceeding involving a modification of an alimony award, which ordinarily requires an application and a court hearing before the change is made. Thus, in Di Tolvo we held that it was improper for an order for alimony to be increased automatically in proportion to salary increases to be received by the husband in the future. As stated therein (at 77), "[t]he advance determination by the court of an automatic increase in alimony is contrary to established principles relating to alimony and the modification thereof." The converse is likewise true. There should not be an automatic decrease or cessation of the payment of alimony based on a future event.
Defendant's cross-appeal asserts that the trial judge erred as to the "[q]uantity of payment for support and maintenance *206 * * *," his "[o]bligation to satisfy past due arrearages" for support, his "[o]bligation to liquidate pension fund and divide same with plaintiff" and his "[o]bligation to bear plaintiff's counsel fees." We find no merit in defendant's argument that the quantum of support was arbitrarily or unreasonably fixed.
Criteria to be considered in assessing support and alimony, among many other factors, include: (1) the actual needs of the wife; (2) the husband's actual means and ability to pay support; (3) the physical condition of the parties; (4) the parties' social status, and (5) the wife's separate income and property. Greenberg v. Greenberg, 126 N.J. Super. 96 (App. Div. 1973). Defendant's projected net income for 1976-1977 was $15,575. His payment of $165 a week to plaintiff amounts to 55% of his net income. He correctly points out that this figure does not include contribution toward medical expenses or life insurance premiums. However, his responsibility for medical and dental payments vests only after the first $100 per child per year. Moreover, his projected income does not include any earnings for summer employment. In addition to the personal living expenses for plaintiff and the children, she is also required to pay the mortgage on the house, at $357 a month. Whether the amount fixed for alimony and support is arbitrary or not should not be made to depend solely upon a percentage of net earnings which is left to the husband. We find no error in the court's adjudication concerning these payments or in the court's refusal to abate defendant's responsibility for the arrearages.
Inasmuch as we have already indicated that the matter of equitable distribution should be reviewed in its entirety, it is possible that the court will make some other order as to division of defendant's present interest in his pension. In any event, we find no error as to such a division, so long as it is understood that defendant is not required to liquidate his financial interest in the pension, but only to pay to plaintiff the sum of $2,000.
*207 In the light of the services of plaintiff's attorney, we are unable to detect any persuasive reason why defendant should not pay to plaintiff's counsel the sum of $1,000, as awarded.
Consistent with the foregoing, with the exception of the direction to pay $165 a week, paragraph A of the judgment is vacated. Paragraphs C and F are also vacated. The cause is remanded to the trial court for the purpose of (1) conducting a supplementary hearing for the taking of any additional proofs necessary to comply with our expressed views and to make findings and a determination with respect to said paragraph A as to the proper amount of support for plaintiff and each of the children, and to delete any determination as of the date of the judgment as to the cessation of the support for plaintiff, and (2) fashioning a more appropriate and equitable plan of distribution whereby plaintiff shall retain the furnishings as her own, the house shall remain for the use of plaintiff and the children as a home, and defendant need not liquidate his teacher's pension. In addition, the judgment should be amended or supplemented to include the determinations orally stated by the judge at the conclusion of the hearing but not incorporated within the final judgment itself. The hearing and findings shall be completed within 60 days and reported to us. In all other respects the judgment is affirmed. We retain jurisdiction.
NOTES
[1] Actually, plaintiff appealed from the whole of the judgment, but her brief makes it eminently clear that her appeal is limited to certain portions thereof which are discussed infra.